IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| GCMC OF WHARTON COUNTY | § | CASE NO. 16-60109 |
| TEXAS, LLC D/B/A GULF COAST | § | |
| MEDICAL CENTER, | § | CHAPTER 7 |
| | § | |
| DEBTOR. | § | |

**TRUSTEE'S EMERGENCY MOTION TO APPROVE SETTLEMENT AGREEMENT
WITH PAUL TUFT, ALAN TUFT, SOUTHWEST HEALTHCARE SERVICES, LLC,
PACIFICA OF THE VALLEY CORPORATION DBA PACIFICA HOSPITAL OF THE
VALLEY, SLD FINANCE, LLC, AND HILL INSURANCE SERVICES, LLC
PURSUANT TO BANKRUPTCY RULE 9019**

Pursuant to Local Rule 9019:

> **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT
> YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY
> CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF
> YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE
> A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU
> MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE
> DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE
> WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT
> FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED
> WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE
> MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST
> ATTEND THE HEARING. UNLESS THE PARTIES AGREE
> OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE
> HEARING AND MAY DECIDE THE MOTION AT HEARING.**

> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR
> ATTORNEY.**

> **EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE
> COURT CONSIDERS THE MOTION ON AN EXPEDITED
> BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO
> ANSWER. IF YOU OBJECT TO THE REQEUSTED RELIEF OR
> IF YOU BELIEVE THAT EXPEDITED CONSIDERATION IS
> NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE
> RESPONSE.**

TRUSTEE'S MOTION TO APPROVE SETTLEMENT AGREEMENT WITH PAUL TUFT, ALAN TUFT, SOUTHWEST
HEALTHCARE SERVICES, LLC, PACIFICA OF THE VALLEY CORPORATION DBA PACIFICA HOSPITAL OF THE VALLEY,
SLD FINANCE, LLC, AND HILL INSURANCE SERVICES, LLC PURSUANT TO BANKRUPTCY RULE 9019

PAGE 1

TO THE HONORABLE DAVID R. JONES, UNITED STATES BANKRUPTCY JUDGE:

Ronald J. Sommers ("**Trustee**"), Chapter 7 trustee for the bankruptcy estate of GCMC of Wharton County Texas, LLC d/b/a Gulf Coast Medical Center ("**Debtor**"), files this *Motion to Approve Settlement Agreement with Paul Tuft, Alan Tuft, Southwest Healthcare Services, LLC, Pacifica of the Valley Corporation d/b/a Pacifica Hospital of the Valley, SLD Finance, LLC, and Hill Insurance Services, LLC Pursuant to Bankruptcy Rule 9019* ("**Motion**").  In support of this Motion, the Trustee respectfully states as follows:

## I.
## JURISDICTION AND VENUE

1.    The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.  This action is a core-proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (N), and (O).

2.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    This Court has constitutional authority to enter a final order regarding this Motion.  Requests for authority to compromise disputes under Bankruptcy Rule 9019 have no equivalent in state law, thereby rendering the Supreme Court's opinion in *Stern v. Marshall* inapplicable.  *See In re Carlew*, 469 B.R. 666, 672 (Bankr. S.D. Tex. 2012) (discussing *See Stern v. Marshall*, 564 U.S. 462 (2011)).  In the alternative, a request for authority to compromise under Bankruptcy Rule 9019 is an essential bankruptcy matter, triggering the "public rights" exception.  *See Id.*

## II.
## RELEVANT BACKGROUND FACTS

**Paragraphs 4 - 12 are a recitation of the facts as the Trustee believes them to exist.  They do not represent admissions of any other party or interested person(s).**

4.    On November 21, 2016 ("**Petition Date**"), the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code.

5.      Before ceasing to do business, the Debtor served as a regional hospital for Wharton County and its surrounding counties.

6.      Within the four years before the Petition Date, the Debtor's records appear to indicate that the Debtor made a variety of payments (the "**Transfers**") to Paul Tuft; Alan Tuft; Southwest Healthcare Services, LLC ("Southwest");[1] Pacifica of the Valley Corporation d/b/a Pacifica Hospital of the Valley ("Pacifica");[2] SLD Finance, LLC ("SLD"); and Hill Insurance Services, LLC ("Hill Insurance") (these parties being collectively referenced as the "**Tuft Parties**").[3]

7.      Upon information and belief, the Transfers may include the following:

a.      $3-4 million to Hill Insurance for insurance policies;

b.      $1.55 million to Paul Tuft[4] for payments on a promissory note;

c.      Between $200,000 - $646,000 to Alan Tuft for consulting work;

d.      A currently unidentified amount to Southwest for payments on a promissory note; and

e.      $1,360,000 to Pacifica for payments on a promissory note.

8.      In September of 2013, Diversified Clinical Services, Inc. ("**Diversified**") filed suit against the Debtor and the Tuft Parties for violations of the Texas Uniform Fraudulent

---

[1] Southwest was an entity owned by Paul Tuft.  According to Southwest, it was the management company that ran the Debtor.  In addition- to providing management services, Southwest directly funded many of the expenses of the Debtor.  Southwest claims that it never received a management fee from the Debtor because of certain loan covenants.  Initially, Southwest did receive a management fee of approximately $100,000.00; however, Southwest claims that it was repaid at the lenders' insistence after the lender determined it was not entitled to be paid.

[2] Pacifica was an entity owned by Paul Tuft.  According to the Tuft Parties, Pacifica provided loans to the Debtor for overhead expenses.

[3] The Trustee considers the Tuft Parties to be insiders of the Debtor.  The Tuft Parties dispute this allegation.

[4] The Trustee believes that the Debtor was owned and/or controlled exclusively by Paul Tuft.  Paul Tuft disputes this allegation.

**TRUSTEE'S MOTION TO APPROVE SETTLEMENT AGREEMENT WITH PAUL TUFT, ALAN TUFT, SOUTHWEST HEALTHCARE SERVICES, LLC, PACIFICA OF THE VALLEY CORPORATION DBA PACIFICA HOSPITAL OF THE VALLEY, SLD FINANCE, LLC, AND HILL INSURANCE SERVICES, LLC PURSUANT TO BANKRUPTCY RULE 9019**

**PAGE 3**

Transfer Act ("**TUFTA**"), breach of contract, quantum meruit, conversion, piercing the corporate veil, alter ego, and trust fund doctrine.[5]

9.      The Trustee and the Tuft Parties believe that the claims asserted by Diversified against the Tuft Parties for conversion, piercing the corporate veil, alter ego, trust fund doctrine, fraudulent conveyance, and any other derivative claims are estate claims that can only be pursued by the Trustee.

10.     In the context of this litigation, Diversified sought to compel the production of additional documentation but encountered problems obtaining documents to substantiate most of the transfers and other related financial records.

11.     In response to the litigation initiated by Diversified, the Tuft Parties asserted general defenses to avoidance and recovery of the foregoing transfers but did make an offer of $280,000.00.

12.     Currently, the Tuft Parties continue to assert their general defenses to the avoidance and recovery of the Transfers.  Specifically, the Tuft Parties argue that they did not receive the alleged payments and there are no records to prove the receipt of the alleged payments in the asserted amount.  According to the Tuft Parties, Diversified's initial attempts at avoiding and recovering the payments in question were based upon an analysis of a general ledger which the Tuft Parties believe recorded accrued payments that were due but actually remained unpaid.  The Tuft Parties also maintain the following:

a.      There was only one promissory note from Paul Tuft to GCMC, and it was in the principal amount of $1,550,000.  GCMC did not fund that note.  It was actually funded by Pacifica.  Paul Tuft repaid that note in full.

---

[5]*Diversified Clinical Services, Inc. vs. GCMC of Wharton County Texas, LLC d/b/a Gulf Coast Medical Center,*

b.      Pacifica and Paul paid off a debt of $1,199,585.73 owed by the Debtor to SCM Specialty Financing;[6]

c.      Pacifica provided capital infusions totaling $10,659,000 to the Debtor and did not convert any assets of the Debtor;

d.      Hill Insurance did not receive $3-4 million in payments from GCMC.  Any payments to Hill Insurance were in exchange for commercial general liability, worker's compensation, E&O, and other policies provided over a period of many years; and

e.      Any payments to Alan Tuft were in exchange for legitimate consulting services he provided pursuant to a written contract, a copy of which was provided to the Trustee.

13.      After considering whether a continued pursuit of litigation against the Tuft Parties is in the best interest of the estate and the creditors and considering the time and expense that would be required to litigate these matters to a conclusion, the Trustee engaged in settlement discussions with the Tuft Parties.

14.      As a result of these discussions, the Trustee and the Tuft Parties have mutually agreed, subject to approval by this Court, to resolve any and all liability of the Tuft Parties to the estate, including but not limited to claims arising under 11 U.S.C. § 548 and TUFTA in exchange for a lump sum payment to the estate in the amount of $280,000.00 ("**Settlement Amount**"). A copy of the agreement which memorializes the terms (the "**Settlement Agreement**") is attached as **Exhibit A** and is incorporated herein for all purposes.  Under the terms of the Settlement Agreement, the Tuft Parties will pay the Settlement Amount to the Trustee within five (5) calendar days from the date an order approving the Settlement Agreement becomes final.  Upon approval of the Settlement Agreement and this Motion, the Tuft Parties intend to use, to the

---

Cause No. 47006, in the 329th Judicial District of Wharton County, Texas (the "DSI Litigation").

extent needed, the settlement as a defense to any continued prosecution of related claims by Diversified.

## III.

## RELIEF REQUESTED

15.     By this Motion, the Trustee seeks authority to enter into the proposed Settlement Agreement with the Tuft Parties for the benefit of the estate.

16.     A compromise involving the bankruptcy estate must reach the standard discussed in *Protective Committee for Indep. Stockholders of TMT Trailer Ferry, Inc., v. Anderson*, 390 U.S. 414 (1968).  Under Fed. R. Bankr. P. 9019, the decision to approve the compromise of a controversy is within the sound discretion of the Bankruptcy Court, but the compromise must be "fair and equitable."  *See In re Aweco, Inc.,* 725 F.2d 293, 297 (5th Cir.), *cert denied*, 496 U.S. 880 (1984); *In re Cajun Electric Power Coop.*, 119 F.3d 349, 355 (5th Cir. 1997).  The Bankruptcy Court should "make a well-informed decision, 'comparing the terms of the compromise with the likely rewards of litigation.'"  *In re Cajun Electric Power Coop.*, 119 F.3d at 356 (citing *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980)).

17.     Before accepting a compromise, a Chapter 7 trustee must reach "an informed judgment, after diligent investigation, as to whether it would be prudent to eliminate the inherent risks, delays and expense of prolonged litigation in an uncertain cause."  *In re Mailman Steam Carpet Cleaning Corp.*, 212 F.3d 632, 635 (1st Cir. 2000) (citing *In re Thompson*, 965 F.2d 1136, 1145 (1st Cir. 1992)).  The Bankruptcy Court does not substitute its own judgment for the trustee's, but instead reviews all the issues and determines "whether the settlement falls below the lowest point in the range of reasonableness."  *In re W.T. Grant Co.*, 699 F.2d 599, 609 (2d

---

[6] SCM Specialty Financing is an investment bank that provides funding opportunities for the healthcare industry.

Cir. 1983) (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.), *cert. denied sub nom. Benson v. Newman*, 409 U.S. 1039 (1972).

18.     To determine whether a proposed compromise is fair and equitable, the Bankruptcy Court should consider the following factors:

> 1)  the probabilities of success should the claim be litigated
>
> 2)  the estimated complexity, expense, and likely duration of the litigation
>
> 3)  the difficulties collecting on any judgment which might be obtained
>
> 4)  all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise

*TMT Trailer*, 390 U.S. at 424.  Consideration of the wisdom of the proposed compromise should include "the paramount interest of creditors with proper deference to their reasonable views" and whether the compromise arose from an arms-length negotiation.  *In re Foster Mortgage Corp.*, 68 F.3d 914-18 (5th Cir. 1996).  The Trustee will address each factor in turn:

19.     <u>Probabilities of Success</u>.  The Trustee believes he would be able to demonstrate that at least some of the Transfers were payments made to the Tuft Parties within the four years prior to the Petition Date and that that one or more of the Transfers would be susceptible to avoidance and recoverable pursuant to the provisions of 11 U.S.C. §§ 548 and 550 and TUFTA; however given the issues encountered by Diversified's counsel in securing adequate documentation (and the assertions made by the Tuft Parties that documentation that would support Diversified's claims does not exist), the Trustee is concerned that he, likewise, may not be able to get documents sufficient to meet the relevant burdens.  The Trustee is also aware that the Tuft Parties may successfully prove up a defense for a portion of the payments or even that some of the elements of a fraudulent transfer are not present. As referenced above, one of the arguments advanced by the Tuft Parties is that payments to the Tuft Parties were in exchange for

goods and/or services of a reasonably equivalent value.  Taking these factors into consideration, the Trustee believes that this factor weighs in favor of this settlement as the settlement strikes a proper balance between risk and reward.

20.     Complexity, Expense, and Duration.   While litigation regarding fraudulent transfers can sometimes be relatively straightforward, the Debtor's pre-petition business transactions, relationships with other individuals and entities, and the multifaceted timeline of various transactions (which necessarily complicates an insolvency analysis) make these claims complex and nuanced.   As such, pursuing these claims in litigation will be expensive and protracted.

21.     As referenced above, extensive discovery will be needed, and the discovery process would likely take, at a minimum, months—with no assurance that the results will fully support the Trustee's claims.   Beyond legal fees that would be incurred in conjunction with propounding and responding to written discovery, the Trustee would incur fees related to securing statements and/or conducting a variety of depositions of individuals with relevant information.   Many—if not all—of these individuals reside out-of-state; as such, the expenses incurred would be significant.

22.     The Trustee would also need to hire experts, including those who could investigate and provide opinions as to insolvency.   It is possible that the Trustee would expend funds related to these types of experts only to discover that the established insolvency date renders one or more of the Transfers protected from avoidance and recovery.   The Trustee anticipates that the expenses to be incurred in conjunction with prosecuting these claims would be in excess $50,000.00.   The Trustee does not believe that these anticipated expenses and the duration of protracted litigation with the Tuft Parties are justified under the circumstances.

TRUSTEE'S MOTION TO APPROVE SETTLEMENT AGREEMENT WITH PAUL TUFT, ALAN TUFT, SOUTHWEST HEALTHCARE SERVICES, LLC, PACIFICA OF THE VALLEY CORPORATION DBA PACIFICA HOSPITAL OF THE VALLEY, SLD FINANCE, LLC, AND HILL INSURANCE SERVICES, LLC PURSUANT TO BANKRUPTCY RULE 9019

PAGE 8

Additionally, by accepting the Settlement Amount at this stage, the Trustee will not be required to pay any version of a contingency fee to special litigation counsel.  Absent an award of attorney fees from the trial court, the Trustee would likely need to secure an award of over $450,000.00 (assuming a contingency fee of around 40%) (and that award amount does not take into account expenses for which special litigation counsel would need to be reimbursed).

23.     Finally, the bankruptcy estate appears that it will be administratively insolvent in the near future (given the steep costs related to document management, disposal, and providing notice to thousands of former patients) and will soon be in need of additional funds in order to meet the Trustee's obligations as they relate to the administration of a bankruptcy estate involving a medical facility.  The Trustee does not currently know the exact number of patients whose records are stored at the Debtor's location; however, he anticipates, based upon a site review of the hard copy records, that the number will be significant—at least tens of thousands of dollars.  The Settlement Amount will help ensure that the Trustee is able to comply with his statutory duties and to protect the patients involved in the Debtor's bankruptcy.

24.     Given these issues related to the anticipated expenses, anticipated length of time litigation would require, and the need for funds in order to protect patient records, the analysis of these factors weigh in favor of approval of the compromise.

25.     <u>Difficulties Collecting Judgment</u>.  To the extent the Trustee were able to secure judgments against the Tuft Parties, the Tuft Parties would not be jointly and severally liable for the varying awards.  The Trustee anticipates that he would have difficulties collecting against the individuals who are included as Tuft Parties.  Furthermore, the Trustee knows that there will be no issue collecting the Settlement Amount given that the attorney for Paul Tuft is currently

holding the full Settlement Amount in an IOLTA account.  Accordingly, this factor weighs slightly in favor of the compromise.

26.     <u>Other Factors</u>.  The Trustee has a duty to expeditiously administer the estate for the benefit of creditors. Based upon his experience, the Trustee believes that the immediate lump sum payment of the Settlement Amount is in the best interest of the estate and its creditors given the amount in controversy, the complexity of litigation, the comparable cost of litigation, and the amount of funds in the estate.  These factors weigh in favor of approval of the compromise.

27.     Given the Trustee's immediate need to address certain issues related to the storage and safeguarding of electronic patient records (and the proper disposal of hard copies of those same patient records), the Trustee requires additional estate funds immediately.  For that reason, the Trustee is asking that the Court consider this motion on an emergency basis.

28.     The Trustee requests emergency consideration of this Motion given that the statute of limitations related to the relevant claims will run in November of 2018.  To the extent that this Court denies the Motion, the Trustee will need time to analyze whether there is a way by which to address the Court's concerns/reasons for denial and then request approval for a new settlement.  If there is not a way to address the Court's concerns/reasons for denial, then the Trustee will need time in order to prepare his lawsuit against the Tuft Parties.

WHEREFORE, the Trustee requests that the Court approve the Settlement Agreement with Paul Tuft, Alan Tuft, Southwest Healthcare Services, LLC, Pacifica of the Valley Corporation d/b/a Pacifica Hospital of the Valley, SLD Finance, LLC, and Hill Insurance Services, LLC as described herein and grant the Trustee such other and further relief to which he may be entitled at law or in equity.

Dated:  September 13, 2018.

**TRUSTEE'S MOTION TO APPROVE SETTLEMENT AGREEMENT WITH PAUL TUFT, ALAN TUFT, SOUTHWEST HEALTHCARE SERVICES, LLC, PACIFICA OF THE VALLEY CORPORATION DBA PACIFICA HOSPITAL OF THE VALLEY, SLD FINANCE, LLC, AND HILL INSURANCE SERVICES, LLC PURSUANT TO BANKRUPTCY RULE 9019**

**PAGE 10**

Respectfully Submitted,

By: */s/ Heather R. Potts*_____
       Heather R. Potts
       Texas Bar No. 24051204
       hpotts@nathansommers.com

Nathan Sommers Jacobs,
A Professional Corporation
2800 Post Oak Blvd. 61st Floor
Houston, TX 77056
(713) 960-0303 (main)
(713)892-4800 (fax)

**COUNSEL FOR CHAPTER 7 TRUSTEE**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on September 13, 2018, a true and correct copy of the foregoing Motion was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system. The undersigned further certifies that the foregoing Motion will be served upon all parties listed on the attached Service List by no later than the next day after the filing of this Notice in accordance with Bankruptcy Local Rule 9013-1(f).

*/s/ Heather R. Potts*
Heather R. Potts

**TRUSTEE'S MOTION TO APPROVE SETTLEMENT AGREEMENT WITH PAUL TUFT, ALAN TUFT, SOUTHWEST HEALTHCARE SERVICES, LLC, PACIFICA OF THE VALLEY CORPORATION DBA PACIFICA HOSPITAL OF THE VALLEY, SLD FINANCE, LLC, AND HILL INSURANCE SERVICES, LLC PURSUANT TO BANKRUPTCY RULE 9019**

**PAGE 12**